377 So.2d 539 (1979)
Roger O. WHEELER, Plaintiff-Appellee,
v.
STATE of Louisiana, DEPARTMENT OF PUBLIC SAFETY, LICENSE CONTROL AND DRIVERS IMPROVEMENT DIVISION, Defendant-Appellant.
No. 7207.
Court of Appeal of Louisiana, Third Circuit.
November 12, 1979.
*540 Foye L. Lowe, Jr., Baton Rouge, for defendant-appellant.
Lloyd F. Love, Ferriday, for plaintiff-appellee.
Before DOMENGEAUX, FORET and SWIFT, JJ.
DOMENGEAUX, Judge.
The Louisiana Department of Public Safety has taken this appeal from a judgment granting the plaintiff a restricted driver's license in order to support his family.
Although it appears that the relief granted plaintiff was under the provisions of La.R.S. 32:415.1, there were some suggestions in the briefs and at oral argument, that it may have been granted pursuant to La.R.S. 32:1471, et seq., the Motor Vehicle Habitual Offender Law, which was interpreted by the Louisiana Supreme Court in the recent case of Smith v. State, through Department of Public Safety, 366 So.2d 1318 (La.1978). As shown hereinafter, since Smith, La.R.S. 32:1479 has been amended and re-enacted.
For the reasons shown hereafter, we find that the plaintiff is not entitled to relief under either statute.
Plaintiff's petition, dated February 13, 1979, alleges that his driver's license was revoked during the year 1973, and that the revocation was extended from time to time by the defendant, Department of Public Safety, with the consequence that the revocations extended to the year 1989. He prayed specifically for a restricted driver's license under the provisions of La.R.S. 32:415.1,[1] and pursuant thereto, was granted *541 a summary hearing by the District Court on February 21, 1979. The defendant Department opposed plaintiff's petition.
The record indicates that in open court, prior to the commencement of the hearing, the trial judge stated that a previous suit, entitled Louisiana Department of Public Safety v. Roger O. Wheeler, to have Wheeler declared an habitual offender, was tried by him and taken under advisement. He then stated that pursuant thereto he would then and there render his decision on that prior suit, which he did as follows:
"It's the finding of the Court that the defendant, Mr. Roger O. Wheeler, is an Habitual Offender and Judgment will be rendered accordingly."[2]
Following that preliminary matter, the court proceeded to hear the present case, which, as aforesaid, was for relief under the provisions of La.R.S. 32:415.1.

IS PLAINTIFF ENTITLED TO RELIEF UNDER LA.R.S. 32:415.1?
The record shows that plaintiff was 22 years of age at the time of the hearing. His traffic record for the previous five years is as follows:
March 4, 1974  Revocation violation-license suspended
 for one year, subsequently
 reinstated.
June 2, 1975  Convicted for careless driving
 and revocation violation-license
 suspended an additional year.
November 5, 1975  DWI conviction, suspension of
 license for additional year, subsequently
 reinstated.
July 7, 1976  Convicted for speeding and revocation
 violation-license suspended
 one additional year.
August 4, 1976  Convicted for speeding and revocation
 violation-additional suspension
 of one year.
November 3, 1976  Convicted for speeding and revocation
 violation occurring on
 October 6, 1976-additional suspension
 of one year.
November 3, 1976  Convicted for DWI and revocation
 violation occurring on
 October 10, 1976-with resulting
 additional suspension.
February 4, 1977  DWI and revocation violation
 conviction-with additional suspension.
November 26, 1977  DWI and revocation violation
 pending.
December 7, 1977  Declared an habitual offender,
 with additional suspension.[3]
A DWI charge on May 29, 1978, and a careless driving and revocation violation charge on July 20, 1978, are pending.[4]
The above uncontested facts show that the plaintiff, Wheeler, has suffered multiple convictions of DWI, careless driving, speeding, and driving with a suspended or revoked driver's license. His driver's license has been suspended repeatedly. He is not entitled to relief under La.R.S. 32:415.1. That statute expressly provides that a restricted license for economic hardship can only be issued where the applicant's driver's license has been suspended, revoked, or cancelled "for the first time only" under La.R.S. 32:414(B), (C), (D), (E), and La.R.S. 32:415. Smith v. State, through Department of Public Safety, 352 So.2d 443 (La.App. 3rd Cir. 1977); Perry v. State, Department of Public Safety, Driver's License Division, 353 So.2d 318 (La.App. 1st Cir. 1977), writ denied 354 So.2d 1385 *542 (La.1978); Howard v. Louisiana Department of Public Safety, 360 So.2d 228 (La. App. 1st Cir. 1978); Bradley v. State, Department of Public Safety, 372 So.2d 1259 (La.App. 3rd Cir. 1979); Wenfrey v. Department of Public Safety, 374 So.2d 119 (La.App. 4th Cir. 1979).
We find, therefore, that the trial court erred in granting a restricted driver's license to plaintiff under the provisions of La.R.S. 32:415.1.

IS PLAINTIFF ENTITLED TO RELIEF UNDER LA.R.S. 32:1471, ET SEQ. (HABITUAL OFFENDER LAW)?

A.
In Smith v. State, through Department of Public Safety, supra, the Supreme Court held, inter alia, that an habitual offender could be granted limited driving privileges in hardship cases during the five-year revocation period. The high Court pronounced that the District Courts had discretion to determine when good cause exists for a conditional restoration of driving privileges during the five-year revocation term.
La.R.S. 32:1479, at the time that the Supreme Court decided the Smith case, read as follows:
"No license to operate motor vehicles in this state shall be issued to an habitual offender, nor shall a nonresident habitual offender operate a motor vehicle in this state:
(1) For a period of five years from the date of the order of the court finding such person to be an habitual offender; and
(2) Until such time as financial responsibility requirements are met; and
(3) Until upon petition, and for good cause shown, such court may, in its discretion, restore to such person the privilege to operate a motor vehicle in this state upon such terms and conditions as the court may prescribe, subject to other provisions of law relating to the issuance of operators' licenses."
It is clear that Smith has been legislatively overruled by Acts Nos. 220 and 347 of the 1979 Regular Session of the Louisiana Legislature,[5] which Acts amended and re-enacted La.R.S. 32:1479, so that it now reads as follows:
"No license to operate motor vehicles in this state shall be issued to an habitual offender, nor shall a nonresident habitual offender operate a motor vehicle in this state until all of the following requirements have been complied with:
(1) a period of five years has elapsed since the date of the order of the court finding such person to be an habitual offender; and
(2) financial responsibility requirements are met; and
(3) Upon petition, after the lapse of the five year period provided above, and for good cause shown, the court, in its discretion, determines that the license should be restored. In restoring to such person the privilege to operate a motor vehicle in this state, the court may prescribe such terms and conditions as it deems necessary to protect the best interests of the public, subject to other provisions of law relating to the issuance of operators' licenses." (Emphasis added)
The amended statute needs no interpretation. It is clear. Five years must elapse from the date of the order of the court finding a person to be an habitual offender, before that person may seek a restoration of driving privileges.
The amended and re-enacted La.R.S. 32:1479 became effective September 7, 1979. We feel that it was intended by the Legislature to be interpretive and procedural legislation, and as such the amended statute should be given retrospective effect.[6] *543 Gulf Oil Corporation v. State Mineral Board, 317 So.2d 576 (La.1974); Ardoin v. Hartford Accident and Indemnity Co., 360 So.2d 1331 (La.1978). Such being the case, the plaintiff was not entitled to have his driving privileges restored under the habitual offender statute.

B.
Assuming, arguendo, that the amended and re-enacted La.R.S. 32:1479 is not to be given retrospective effect, we find that plaintiff has failed to show good cause for limited restoration of driving privileges, even under the rationale of the Smith case.
The only evidence offered to support plaintiff's showing of hardship was his own testimony. He is 22 years of age. He readily admits to his multiple convictions and suspensions enumerated. At the time of the hearing he had been married for four months. He is the sole source of support for himself and his wife. He is an oilfield driller presently working on a rig in Mississippi. (The location of the rig is not stated, nor the distance from his home in Jonesville, Louisiana.) He has been employed with different companies for about four years, working on rigs. He has no need for driving privileges while on the job, but must get to and from his home to the drilling rig site. Heretofore he had been getting to and from his work by riding with someone else"when I can, and then when I couldn't, I drive myself." He did generally ride to work by"just, wellI usually have to drive out and meet somebody, or either have somebody take me, whoever I'm working with." When he is on the job at the rig site he either stays"in a trailer, or something, rent or something." He does not commute back and forth daily. He earns $2,000.00 per month and is employed the full twelve months of the year. It is"just about impossible" to have someone drive him to and from work. Finally, plaintiff responded to questions as follows:
"Q: Couldn't find someone that would, that you could even pay to drive you to and from work?
A: If I done that, as far as usually most of the time you have to drive, you couldn't make enough to get by on.
Q: Have you checked into, to see how much it would cost?
A: No sir, I haven't checked to see what it would cost."
We conclude that the plaintiff has failed to show good cause for the restoration of his driving privileges. At best, he has only shown that to continue his revocation would cause him inconvenience and some added expense. A showing of inconvenience is not sufficient. See Johnson v. State, Department of Public Safety, 358 So.2d 662 (La. App. 1st Cir. 1978). See also Smith v. Louisiana Department of Public Safety, 372 So.2d 1249 (La.App. 3rd Cir. 1979), writ denied 375 So.2d 656 (1979), which case was decided by us on remand, wherein we stated:
"As we view the strong legislative policy in mandating that habitual offenders be removed from the highways in the interest of the safety of all persons who travel or otherwise use our highways, any easy avenue for finding good cause to allow driving privileges to an habitual offender should be precluded.
Should it develop on remand that alternate means of transportation to and from work may result in more cost or inconvenience to Mr. Smith, that fact should by no means outweigh the right of maximum safety afforded to persons who travel or otherwise use our highways."
Although plaintiff made a self-serving statement that it would be "just about impossible" to have someone drive him to and from work, and suggested that to pay someone to do so would not be worth it, because of the expense involved, he nevertheless *544 admitted that he made no efforts to determine the cost of such an arrangement.
Plaintiff's attempted showing of hardship is not sufficient good cause to allow him a restricted license to go to and from work. The record shows that in the past he has been riding to and from work with his co-employees. Although this is a matter of some inconvenience to him, this does not outweigh the strong public interest of protecting safety on the highways. Additionally, considering his rather substantial salary, it is not unreasonable to expect the plaintiff to make other arrangements for his transportation, if and when necessary.
For these reasons, and again assuming that restricted driving privileges were granted under the provisions of the Habitual Offender Law, we find that the trial court erred in granting such restricted driving privileges.
For the above reasons, the judgment of the District Court granting plaintiff-appellee, Roger O. Wheeler, restricted driving privileges is hereby reversed, and it is Ordered that his petition be dismissed.[7]
All costs at trial and on appeal are assessed against plaintiff-appellee.
REVERSED AND RENDERED.
FORET, J., concurs with written reasons.
FORET, Judge, concurring.
I concur in the reversal of the trial court judgment granting plaintiff restricted driving privileges. Plaintiff is not entitled to restricted driver's license under the provisions of LSA-R.S. 32:415.1 for the reason that that statute provides that a person whose driver's license is suspended, revoked, or cancelled for the first time only shall have the right to file a petition in the district court of the parish where he is domiciled, alleging hardship circumstances. Inasmuch as this was not plaintiff's first revocation or suspension, he does not qualify for restricted driving privileges under the statute.
With reference to the habitual offender statute, namely La.R.S. 13:1479, as amended by Act 347 of the 1979 regular session of the Louisiana Legislature, which the majority holds to be remedial and interpretative legislation, plaintiff is not entitled to a restricted driver's license within a five-year period starting from the date of the order of the court finding him to be an habitual offender.
However, I cannot agree with the dictum in the majority opinion which assumes, arguendo, that even if the amended and re-enacted LSA-R.S. 32:1479 is not to be given retrospective effect, then the majority finds that plaintiff has failed to show good cause for limited restoration of driving privileges. With this finding, I cannot agree. The trial court found that plaintiff had shown sufficient hardship to qualify for restricted driving privileges, and I cannot agree that that the trial court abused its "much discretion" in so finding.
NOTES
[1] That statute, in pertinent part, reads as follows:

"Upon suspension, revocation, or cancellation of a person's drivers license for the first time only as provided for under R.S. 32:414(B), (C), (D), (E), and R.S. 32:415 said person after initial notice from the department shall have the right to file a petition in the district court of the parish in which the applicant is domiciled alleging that revocation of his driving privileges will deprive him or his family of the necessities of life or will prevent him from earning a livelihood. The district court is vested with jurisdiction to set the matter for contradictory hearing in open court upon ten days written notice to the department, and thereupon to determine whether the allegations of hardship have merit. Upon determination by the court that the lack of a license would deprive the person or his family of the necessities of life, the court may order that the person be granted by the department a restricted license to enable the person to continue to support his family. ..."
[2] Although not contained in the record lodged with us, it was indicated in brief and later at oral argument by counsel for plaintiff-appellee, that actually Wheeler had been adjudged an habitual offender in that suit on December 7, 1977, but that that judgment was set aside because of insufficient citation on Wheeler at the time of that suit. At oral argument, a joint motion was filed with us to supplement the record to include a judgment dated January 15, 1979, which nullified, revoked, and set aside the December 7, 1977 judgment declaring plaintiff to be an habitual offender. We granted the motion.
[3] See Footnote 2. Apparently a new judgment, after proper proceedings, was entered on February 21, 1979.
[4] Although not in the record, it is indicated by counsel for plaintiff-appellee, in brief and at oral argument, that, pursuant to a plea bargain arrangement, Wheeler pleaded guilty to these referred to pending charges. The Department of Public Safety was not a party to, nor did it participate in any such arrangement.
[5] Act No. 220 was originally House Bill No. 973, and Act No. 347 was Senate Bill No. 460. The two Acts are identical.
[6] "... such legislation does not violate the principle of nonretroactivity of laws. The interpretive legislation does not create new rules, but merely establishes the meaning that the interpreted statute had from the time of its enactment." Gulf Oil, 317 So.2d at 591. The legislative history of the amended and re-enacted La.R.S. 32:1479 clearly shows its purpose was specifically to overrule Smith. It also shows that the intention of the statute at the time it was originally passed was to provide a mandatory, not discretionary, five year period of suspension of driving privileges. This was the interpretation placed on the original statute before the Smith decision prompted the legislature to use even clearer language.
[7] When the case of Joseph Smith v. Louisiana Department of Public Safety was remanded to us by the Supreme Court, we in turn remanded the case to the District Court. 372 So.2d 1249 (La.App. 3rd Cir. 1979). We do not deem that the case at bar warrants a further remand. We find differences in this case and conclude that the record herein is such that a decision forthwith is in order.